IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEFFREY R. PURTELL and<br>VICKI A. PURTELL,<br><br>    Plaintiffs,<br>  v.<br><br>BRUCE MASON, in his individual<br>capacity,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>) Case No. 04 C 7005<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiffs Jeffrey R. Purtell and Vicki A. Purtell filed a two-count Complaint against Defendant Village of Bloomingdale Police Officer Bruce Mason alleging that he violated their First and Fourth Amendment rights to the United States Constitution. *See* 42 U.S.C. § 1983. Before the Court is Officer Mason's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, the Court grants in part and denies in part Officer Mason's motion.

## BACKGROUND

### I. The Purtells

The Purtells resided at 165 Jackson Lane, in the Village of Bloomingdale, Illinois for approximately 13 years prior to the incident giving rise to the present lawsuit. (R. 21-1, Def.'s Local Rule 56.1 Stmt., ¶ 5.) In October of 1995, the Purtells purchased a recreational vehicle ("RV") that measured 38 feet in length and over 12 feet in height. (*Id.* ¶ 6.) In January of 2001, Jeffrey Purtell delivered a letter to his neighbors informing them that due to his family's financial and medical problems, he needed to park his RV at his residence. (*Id.*; R. 25-1, Pl.'s

Addl. Stmt. Facts, ¶ 4.)

## II. Village of Bloomingdale Ordinance

Betty and Jim Garbarz have resided at 169 Jackson Lane, directly south of the Purtells' home, since the late 1980s or early 1990s. (R. 21-1, Def.'s Stmt. ¶ 7.) Jeffrey Purtell sent a letter to Jim Garbarz dated January 21, 2001 regarding the parking of the Purtells' RV at their residence. (*Id.* ¶ 8.) Jim Garbarz testified that he had no objection to the Purtells parking their RV on their property for a few months, but that he grew unhappy when the Purtells had parked the vehicle on their property off and on for over a year. (*Id.* ¶ 9.) Eventually, Jim Garbarz called the Village of Bloomingdale to complain about the presence of the RV on the Purtells' property. (*Id.*)

At all times relevant to this case, Diane Lesner, her husband Robert, and two children resided at 161 Jackson Lane, directly north of the Purtells' residence. (*Id.* ¶ 12.) In August of 2002, some of the Purtells' neighbors, including Diane Lesner and the Garbarzs, began to support the passage of a Village of Bloomingdale ordinance that would prohibit the parking of recreational vehicles on residential property. (*Id.* ¶¶ 13, 14.) On August 17, 2002, the Village of Bloomingdale published a Notice Of Public Hearing indicating that on September 3, 2002, the Plan Commission of the Village of Bloomingdale would conduct a public hearing and meeting concerning the proposed ordinance. (R. 25-1, Pl.'s Stmt. ¶ 13.) A Plan Commission meeting also took place on October 1, 2002. (*Id.*) The Purtells attended these meetings and expressed their opposition to the ordinance, whereas the Garbarzs and Diane Lesner expressed their support for the ordinance. (R. 21-1, Def.'s Stmt. ¶ 14.) In November of 2002, the Village Board of Bloomingdale passed an ordinance prohibiting the parking of RVs on residential property. (*Id.* ¶

15; R. 25-1, Pl.'s Stmt. ¶ 16.)

## III. The Tombstones

In mid-October of 2002, Jeffrey Purtell erected several "tombstones" on his front lawn as Halloween decorations, some of which made specific reference to neighbors who supported the passage of the RV ordinance. (R. 21-1, Def.'s Stmt. ¶ 16.) One tombstone referenced Jim Garbarz and stated:

> Here Lies Jimmy,
> The OlDe Towne IdioT
> MeAn As sin even withouT his Gin
> No LonGer Does He wear
> That sTupiD Old Grin ...
> Oh no, noT where
> they've sent Him!
> -1690-

(*Id.* ¶ 20.) Jeffrey Purtell admits that the "Jimmy" tombstone referred to Jim Garbarz and by making the tombstone, he was attempting to show Jim Garbarz how ignorant he was regarding the RV ordinance. (*Id.* ¶ 21.)

Another tombstone, directed at Diane Lesner, stated:

> – 1610 –
> Dyean was Known for Lying
> So She was fried.
> Now underneath these daises
> is where she goes crazy!!
>
> – 1680 –
> Roses are red.
> Violets are blue
> There's stiLL some space
> Waiting for you!

(*Id.* ¶¶ 24, 25.)

Jeffrey Purtell intended for another tombstone to reference Betty Garbarz as a protest

against her attitude of "her lying to me, her dissatisfaction, her distrust of the entire situation."

(*Id.* ¶¶ 26, 27.) This tombstone stated:

> BeTTe wAsN'T ReADy,
> BuT here she Lies
> Ever since that night she DieD.
> 12 feet Deep in this trench ...
> Still wasn'T Deep enough
> For that wenches Stench!
> – 1690 –

(*Id.*)

Furthermore, the Purtells placed another tombstone in their yard about their neighbor, John Berka, stating:

> Old John Burkuh
> Said he didn'T give a care
> So They buried hiM
> aLive uP To his hair.
> He couLdn'T breath
> So now we're relieved
> Of ThaT NasTy oLd jerk!
> – 1888–

(R. 25-1, Pl.'s Stmt. ¶¶ 21, 22, 23.) John Berka favored the proposed RV ordinance and voiced his opinion at one of the Plan Commission meetings. (*Id.* ¶¶ 17, 20.)

Betty Garbarz first observed the tombstones in October of 2002 and called the Bloomingdale police because she believed that the Purtells were publicly ridiculing her in retaliation for her support of the RV ordinance. (R. 21-1, Def.'s Stmt. ¶¶ 28, 30.) The "Jimmy" tombstone also offended Jim Garbarz and he testified at his deposition that he construed the tombstone to mean that one of the Purtells would do something to injure or kill him. (*Id.* ¶¶ 35, 36.) When Diane Lesner saw the tombstones in the Purtells' front yard, she also became upset. (*Id.* ¶ 40.) Within a day or two of reading the tombstones, Jim Garbarz called the Bloomingdale

4

Police Department. (*Id.* ¶ 45.)

## IV. Events of October 18, 2002

Meanwhile, on October 18, 2002, Bloomingdale police officers visited Jeffrey Purtell at his home and one of the officers, Sergeant Stick, told Purtell that his neighbors had flagged down the police and told them that they were disturbed by "some of the verbiage" on the tombstones. (*Id.* ¶ 47.) At that time, the police officers asked Jeffrey Purtell to take down the tombstones, but he refused. (*Id.* ¶ 48.) Jeffrey Purtell told the police that his right of freedom of speech protected the tombstones, but he agreed to cover the names on the tombstones with duct tape and consequently did so. (*Id.* ¶ 49.) After that, the police officers told Betty Garbarz that the Purtells would place tape over the names and take down the tombstones after Halloween, asking her to "please let it go." (*Id.* ¶¶ 51, 52.)

## V. Events of November 6, 2002

On November 6, 2002, Betty Garbarz called the police because Halloween had passed, the tombstones were still in place, and the duct tape was off of her husband's name on the "Jimmy" tombstone. (*Id.* ¶ 53.) That same day, Defendant Officer Bruce Mason was dispatched in response to Betty Garbarz's call, along with his back-up, Officer Hill. (*Id.* ¶ 55.) Upon arrival, Officer Mason observed the tombstones. (*Id.*)

Officers Mason and Hill spoke to Jim Garbarz and Diane Lesner who told him that they had an ongoing problem with the Purtells because of the tombstones and that the neighbors took the tombstones "as a threat, and they were alarmed and disturbed by that, the fact that their name was on a tombstone." (*Id.* ¶ 56, Ex. E at 25-26.) Officer Mason also testified that the neighbors believed that Jeffrey Purtell "was angry with them because they went to the Village Board,

5

complaining about his RV parked in front of his home" and "they were afraid that he was planning some type of revenge for that." (*Id.* ¶ 57, Ex. E at 30-31.) Furthermore, Officer Mason testified that the neighbors feared violence and told him they had previously argued with Jeffrey Purtell. (*Id.*, Ex. E at 40.) The neighbors also told Officer Mason that on a prior occasion, the Bloomingdale police had spoken to Jeffrey Purtell about the tombstones and that afterwards, Purtell placed tape over the names. (*Id.* ¶ 66.)

Diane Lesner spoke to Officers Hill and Mason on November 6, 2002 telling them that they wanted the tombstones taken down because they were upsetting to her son Jimmy, who thought the "Jimmy" tombstone referred to him. (*Id.* ¶¶ 59-61.) Diane Lesner told one of the police officers that she wanted to press charges. (*Id*. ¶ 65.) The officer responded that she could press disorderly conduct charges. (*Id*.)

Officers Hill and Mason also spoke with Jeffrey Purtell on November 6, 2002.[1] (*Id.* ¶ 68.) Officer Mason explained to Purtell that the neighbors were upset about the tombstones and the fact that the tape had fallen off one of the tombstones revealing the name. (*Id.*) Purtell informed Officer Mason that he was upset with his neighbors and directed the tombstones at them not as threat, but because of the RV ordinance. (*Id.* ¶ 69.) Officer Mason testified that he then asked Jeffrey Purtell to take down the tombstones to keep the peace in the neighborhood, but Purtell refused to do so. (*Id.* ¶ 71, Ex. E at 36-37.) Meanwhile, as Purtell was covering the

---

[1] Plaintiffs contend that it is unclear whether Officer Mason talked with the neighbors first or Jeffrey Purtell first upon arriving in their neighborhood on November 6, 2002. (R. 21-1, Def.'s Stmt. 57.) Plaintiff's contention is irrelevant because Officer Mason heard from both sides before temporarily arresting Purtell. (*Id.*, Ex. D, Betty Garbarz Dep. at 49-55, Ex E. Bruce Mason Dep. at 33-46, Ex. F, Jim Garbarz Dep. at 39 - 44, Ex. G., Jeffrey Hill Dep, at 14-27, Ex. H, Diane Lesner Dep. at 36-38).

name on the tombstone, the neighbors came out to speak with the police. (*Id.* ¶ 72.) Thereafter, the police advised Purtell that the neighbors wanted him arrested because of the words on the tombstones. (*Id.*) Then Robert Lesner arrived home and he and Purtell began to argue loudly after which the police had to physically separate them. (*Id.* ¶ 73.)

Officer Mason then told Jeffrey Purtell that he wanted him to take down the tombstones to avoid arresting him on a complaint for disorderly conduct. (*Id*. ¶ 79.) Jeffrey Purtell refused to take down the tombstones. (*Id.* ¶ 80.) Consequently, Officer Mason handcuffed him. (*Id.*) After being in handcuffs for a "couple" or a "few" minutes, Purtell stated that he would remove the tombstones. (*Id*. ¶ 81.) Officer Mason then removed the handcuffs from Purtell. (*Id*.) After removing the handcuffs, one of the police officers spoke to the neighbors who agreed not to press charges against Purtell if he removed the tombstones. (*Id.* ¶ 82.) Purtell then removed the tombstones in the presence of the police. (*Id*.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of material fact exists, the Court construes the

7

facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255. The existence of a factual dispute alone is not sufficient to defeat a summary judgment motion, instead the non-moving party must present definite, competent evidence to rebut the summary judgment motion. *Butts v. Aurora Health Care, Inc.,* 387 F.3d 921, 924 (7th Cir. 2004).

## ANALYSIS

**I.      First Amendment Claim**

    **A.      Fighting Words**

In Count I of the Complaint, the Purtells contend that Officer Mason violated their First Amendment rights when he requested that they remove the tombstones from their property. Officer Mason asserts that the language on the tombstones did not amount to an expression of ideas, but instead constituted "fighting words" that were not protected speech under the First Amendment.

The First Amendment protects the freedom of speech and expressive conduct and generally prevents the government from proscribing such activities. *RAV v. City of St. Paul, Minnesota,* 505 U.S. 377, 382, 112 S.Ct. 2538, 2542, 120 L.Ed.2d 305 (1992). First Amendment protections of speech and expressive conduct, however, are not absolute. *Virginia v. Black,* 538 U.S. 343, 358, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003) (Virginia's statute banning cross-burning with intent to intimidate "does not run afoul of the First Amendment"). The Supreme Court has held that fighting words – "those personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction" – are not protected speech under the First Amendment. *Id.* (quoting *Cohen v.*

8

*California,* 403 U.S. 15, 20, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971)). To determine whether speech or expressive conduct constitute "fighting words," the Court considers the language in light of the circumstances in which they are uttered and if the words are "likely to provoke the average person to retaliation, and thereby cause a breach of the peace." *Texas v. Johnson,* 491 U.S. 397, 409, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989) (quoting *Chaplinsky v. New Hampshire,* 315 U.S. 568, 572, 62 S.Ct. 766, 86 L.Ed. 1031 (1942)); *see also Brandenburg v. Ohio,* 395 U.S. 444, 447-48, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969) (speech not protected if it incites imminent illegal activity).

Considering the language in light of the circumstances surrounding the tombstones, Officer Mason has failed to establish, as a matter of law, that the language on the tombstones constitutes "fighting words." In determining whether language constitutes fighting words, the Court must examine if the words would incite an "immediate breach of the peace" or are "likely to provoke violent reaction." Here, the testimony in the record reveals that the neighbors thought the language on the tombstones constituted threats and that they were alarmed and disturbed by their names on the tombstones. Also, Jim Garbarz testified that he thought that the tombstones meant that one of the Purtells was going to do something to injure or kill him. There is no evidence in the record, however, that the language on the tombstones would incite the neighbors to react violently or in retaliation and any such inference is a question for the jury. *See Wallace v. Jaffree,* 472 U.S. 38, 76, 105 S.Ct. 2479, 2489, 86 L.Ed.2d 29 (1985) (O'Connor, J., concurring) (question of whether fighting words are "likely to provoke the average person to retaliation" is mixed question of fact and law). Accordingly, there is a genuine issue of material fact whether the language on the tombstones constitutes fighting words, and thus is excepted

9

from First Amendment protections.

B. **Qualified Immunity**

Nevertheless, Officer Mason contends that he is protected from this civil lawsuit by qualified immunity. In general, qualified immunity shields government officers performing discretionary functions from civil litigation. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). When determining whether qualified immunity shields a police officer from a Section 1983 action, the Court undertakes a two-part inquiry. *Jones v. Wilhelm,* 425 F.3d 455, 460 (7th Cir. 2005). The Court's first inquiry is whether the facts, viewed in the light most favorable to the Purtells, show that Officer Mason violated a constitutional right. *Id.* (citing *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). If the alleged facts state a constitutional violation, the Court must determine whether the constitutional right was clearly established at the time of Officer Mason's conduct. *Wernsing v. Thompson,* 423 F.3d 732, 742 (7th Cir. 2005) (citing *Saucier*, 533 U.S. at 201).

The Court turns to the second qualified immunity inquiry, because, as discussed above, there is a genuine issue of material fact whether the language on the tombstones constitutes protected speech. Under the second qualified immunity prong, it is the Purtells' burden to establish that their First Amendment right was "clearly established." *Id.* To do so, the Purtells "must demonstrate either that a court has upheld the purported right in a case factually similar to the one under review, or that the alleged misconduct constituted an obvious violation of a

constitutional right." *Id.*

The Purtells do not set forth an analogous case concerning the right to freedom of speech applying factually similar circumstances, thus the Court looks to whether Officer Mason's conduct "constituted an obvious violation of a constitutional right." *See id.*; *see also Nabozny v. Podlesny,* 92 F.3d 446, 456 (7th Cir. 1996) ("liability is not predicated upon the existence of a prior case that is directly on point"). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *See Saucier,* 533 U.S. at 202; *see also Brosseau v. Haugen,* 543 U.S. 194, 125 S.Ct. 596, 599, 160 L.Ed.2d 583 (2004) (per curiam). This inquiry is two-fold: (1) whether the plaintiff's constitutional rights were clearly established; and (2) whether a reasonable police officer in Officer Mason's position would have understood that his actions were unlawful. *See Saucier,* 533 U.S. at 202; *Anderson v. Creighton,* 483 U.S. 635, 640-41, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

There is no doubt that a government officials' suppression of speech implicates the First Amendment. *See Texas v. Johnson,* 491 U.S. at 409; *see also Multimedia Holdings Corp. v. Circuit Court of Florida, St. Johns County,* ___ U.S. ___, 125 S. Ct. 1624, 1626, 161 L. Ed. 2d 590 (2005) (governmental pressure or coercion against free speech unconstitutional). Accordingly, the Court addresses whether a reasonable police officer in Officer Mason's position would have understood that his actions were unlawful. Because this is an objective test, the Court does not consider Officer Mason's subjective beliefs. *Anderson v. Creighton,* 483 U.S. at 641; *see also Hammond v. Kunard*, 148 F.3d 692, 696-97 (7th Cir. 1998) (subjective factors not ignored because information possessed by officer relevant to inquiry). Instead, the Court

looks to the fact-specific, but objective question of whether a reasonable officer could believe that Officer Mason's actions were lawful in light of clearly established law and the information Officer Mason possessed. *Anderson v. Creighton,* 483 U.S. at 641; *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 620 (7th Cir. 2002) (question turns on "objective legal reasonableness" of officer's conduct). To determine if an officer acts in an objectively reasonable manner, the Court examines whether police officers of reasonable competence could disagree as to the legality of Officer Mason's conduct. *Malley v. Briggs,* 475 U.S. at 341. If so, Officer Mason is entitled to qualified immunity. *Id.*

Thus, whether qualified immunity shields Officer Mason turns on the objective reasonableness of his actions during his interaction with Jeffrey Purtell, as assessed in light of Jeffrey Purtell's right to freedom of speech. Evidence in the record reveals that before Officer Mason asked Jeffrey Purtell to take down the tombstones, Officer Mason was aware that the neighbors and Jeffrey Purtell were having a dispute over the RV ordinance. In fact, Jeffrey Purtell told Officer Mason that he had put up the tombstones because of the neighbors' support of the RV ordinance. On the other hand, Officer Mason testified at his deposition that he did not understand that the tombstones were part of a political protest, and that Jeffrey Purtell did not tell him that he was protesting a law. (Ex. E., Bruce Mason Dep. at 47, 70-71.) Officer Mason also testified that based on the totality of the circumstances, he perceived the tombstones as a threat, not a protest. (*Id.* at 71.) Based on this evidence, there is a genuine issue of material fact as to whether Officer Mason acted in an objectively reasonable manner when he asked Jeffrey Purtell to take down the tombstones based on the circumstances he confronted on November 6, 2002. As such, the Court denies Officer Mason's Motion for Summary Judgment as to the Purtell's

12

First Amendment claim.

## II. Fourth Amendment Claim

In Count II of the Complaint, the Purtells bring a false arrest claim pursuant to the Fourth Amendment. *See* 42 U.S.C. § 1983. To recover under Section 1983, the Purtells must prove that Officer Mason deprived Jeffrey Purtell of a federal right while acting under the color of state law. *Pepper v. Village of Oak Park,* 430 F.3d 805, 808 (7th Cir. 2005). The existence of probable cause to arrest precludes a Section 1983 lawsuit for false arrest. *Morfin v. City of East Chicago,* 349 F.3d 989, 997 (7th Cir. 2003) (citations omitted). Thus, the Court turns to the legal bases for Jeffrey Purtell's arrest.

"[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates,* 462 U.S. 213, 243 n. 13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). To have probable cause for an arrest, a police officer must reasonably believe, in light of the facts and circumstances within his knowledge at that time, that the suspect has committed or was committing a crime. *United States v. Parra*, 402 F.3d 752, 763-64 (7th Cir. 2005) (citations omitted); *see also Gates,* 462 U.S. at 232 (probable cause "turn[s] on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules").

The Illinois disorderly conduct statutes reads in pertinent part: "A person commits disorderly conduct when he knowingly does any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace." 720 ILCS 5/26(a)(1). The intent of the disorderly conduct statute is to guard against the invasion of the right of others not to be harassed without justification. *People v. Redwood,* 335 Ill.App.3d 189, 194, 269 Ill.Dec. 288, 780 N.E.2d

760 (Ill.App.Ct. 2002). As the Seventh Circuit explains "the emphasis of the statute is upon the tendency of the conduct to disturb others and to provoke disruptions of public order upon the unreasonableness of the activity when viewed in the context of the surrounding circumstances." *Gower v. Vercler*, 377 F.3d 661, 670 (7th Cir. 2004) (quotations and citations omitted).

Here, the Purtells make no argument concerning Officer Mason's qualified immunity in the context of their Fourth Amendment claim. Nevertheless, as discussed above, before Officer Mason arrested Jeffrey Purtell for disorderly conduct, the Purtells' neighbors told Officer Mason that they viewed the language on the tombstones as a threat and that they were afraid that Purtell was planning some type of revenge for their support of the RV ordinance. In addition, Diane Lesner told the police officers that she wanted to press charges against Jeffrey Purtell. Although Jeffrey Purtell told Officer Mason that he did not erect the tombstones as a threat, shortly thereafter, Purtell and his neighbor Robert Lesner began to argue after which the police had to physically separate the two men.

Under these circumstances, Officer Mason could reasonably believe that Jeffrey Purtell was acting in a manner that alarmed or disturbed his neighbors and provoked a breach of the peace. As the record reveals, the Purtells' neighbors felt threatened by Purtell and were disturbed that their names were on the tombstones. Furthermore, Jeffrey Purtell's altercation with his neighbor, Robert Lesner, supports the conclusion that Purtell was provoking a breach of the peace. Accordingly, Officer Mason had probable cause to arrest Jeffrey Purtell, and thus the Purtells' Fourth Amendment claim must fail.

## **CONCLUSION**

For these reasons, the Court grants in part and denies in part Officer Mason's Motion for

Summary Judgment.

Date: January 17, 2006

                                      **ENTERED**

_____
**AMY J. ST. EVE**
**United States District Court Judge**