IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEFFREY R. PURTELL and <br> VICKI A. PURTELL, <br>     Plaintiffs, <br>   v. <br> BRUCE MASON, in his individual <br> capacity, <br>     Defendant. | Case No. 04 C 7005 |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiffs Jeffrey R. Purtell and Vicki A. Purtell bring a post-trial motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b), or in the alternative, a motion for a new trial pursuant to Rule 59(a). For the following reasons, the Court denies Plaintiffs' motions.

## BACKGROUND

The Purtells filed the present lawsuit against Defendant Village of Bloomingdale Police Officer Bruce Mason alleging that he violated their First and Fourth Amendment rights to the United States Constitution. *See* 42 U.S.C. § 1983. The Court granted Officer Mason's Motion for Summary Judgment regarding the Purtells' Fourth Amendment claim. The Court, however, denied Officer Mason's summary judgment motion regarding the Purtells' First Amendment claim. At trial, the Purtells argued that Officer Mason violated their First Amendment rights when he requested that they remove certain Halloween tombstone "decorations" from their property. The Court conducted a jury trial on April 17 and 18, 2006, after which the jury returned a verdict in favor of Officer Mason. The Purtells then filed the present post-trial

motions.

## ANALYSIS

**I.      Judgment as a Matter of Law Pursuant to Rule 50(b)**

The Purtells first argue that based on the evidence presented at trial, no reasonable jury could have determined liability in favor of Officer Mason. When ruling on a motion for judgment as a matter of law following a jury verdict, the Court does not re-weigh the evidence presented at trial or make credibility determinations. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Instead, considering the totality of the evidence, the Court determines whether the jury was presented with a "legally sufficient amount of evidence from which it could reasonably derive its verdict." *Massey v. Blue Cross-Blue Shield of Illinois*, 226 F.3d 922, 924 (7th Cir. 2000). In other words, the Court must determine whether any rational jury could have found for Officer Mason. *See Harvey v. Office of Banks & Real Estate,* 377 F.3d 698, 707 (7th Cir. 2004). In determining a motion under Rule 50(b), the Court views the evidence and all reasonable inferences in a light most favorable to the party who prevailed under the verdict – in this case Officer Mason. *Reeves*, 530 U.S. at 150-51; *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.,* 342 F.3d 714, 721 (7th Cir. 2003).[1]

      **A.      Fighting Words**

---

[1] The Purtells' reliance on *Hurley v. Irish-American Gay, Lesbian, & Bisexual Group of Boston,* 515 U.S. 557, 581, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995) for the Court's standard of review is misplaced. The procedural history in *Irish-American* involved the defendants' appeal from a Massachusetts trial court's preliminary injunction order. *See Irish-American Gay, Lesbian & Bisexual Group of Boston v. Boston,* 418 Mass. 238, 636 N.E.2d 1293 (1994). Accordingly, the United States Supreme Court's review did not involve any post-trial motions involving a jury's factual findings and verdict.

The Purtells argue that the language on the Halloween tombstones contained speech that was protected by the First Amendment, specifically, that such speech was not "fighting words." Although the First Amendment protects freedom of speech and expressive conduct, *see RAV v. City of St. Paul, Minnesota,* 505 U.S. 377, 382, 112 S.Ct. 2538, 2542, 120 L.Ed.2d 305 (1992), First Amendment protections are not absolute. *Virginia v. Black,* 538 U.S. 343, 358, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003). The Supreme Court has held that fighting words – "those which by their very utterance inflict injury or tend to incite an immediate breach of the peace" – are not protected under the First Amendment. *Chaplinsky v. New Hampshire,* 315 U.S. 568, 572, 62 S.Ct. 766, 86 L.Ed. 1031 (1942).

Viewing the evidence and all reasonable inferences in a light most favorable to Officer Mason, the parties presented the jury with a "legally sufficient amount of evidence from which it could reasonably derive its verdict." *See Massey,* 226 F.3d at 924. In short, a rational jury could return a verdict in Officer Mason's favor by concluding that the words on the tombstones constituted fighting words, and thus were not protected by the First Amendment.

Evidence presented at trial revealed that the Purtells placed the tombstones referring to their neighbors in their front yard facing the street. The tombstones specifically referred to their neighbors, who saw the language on the tombstones. For instance, the tombstone that referred to the Purtells' neighbor James Garbarz stated:

> Here Lies Jimmy,
> The OlDe Towne IdioT
> MeAn As sin even withouT his Gin
> No LonGer Does He wear
> That sTupiD Old Grin ...
> Oh no, noT where
> they've sent Him!
> -1690-

The tombstone referring to the Purtells' neighbor Betty Garbarz read:

BeTTe wAsN'T ReADy,
BuT here she Lies
Ever since that night she DieD.
12 feet Deep in this trench ...
Still wasn'T Deep enough
For that wenches Stench!
– 1690 –

In addition, the Purtells placed a Halloween tombstone in their yard concerning their neighbor Diane Lesner stating:

– 1610 –
Dyean was Known for Lying
So She was fried.
Now underneath these daises
is where she goes crazy!!

Moreover, the jury heard testimony that Diane Lesner, James Garbarz, and Betty Garbarz were upset because their names appeared on the tombstones. Betty Garbarz testified that she was so upset by the language on the tombstones that she contacted the Village of Bloomingdale Police Department. She further testified that she never had any doubt that the "Bette" tombstone referred to her. After seeing the tombstones, she stated that she was ashamed and humiliated, but did not talk to Jeffrey Purtell about them because she was afraid of him.

Defense counsel also presented evidence that the neighbors thought the language on the tombstones constituted threats and that they were alarmed and disturbed by their names being on the tombstones. James Garbarz testified that he interpreted the "Jimmy" tombstone as a threat and told the police that he felt threatened by the tombstone. He also testified that he had concerns about his safety and what Jeffrey Purtell might do to him.

Officer Mason testified that the neighbors told him that they had an ongoing problem

with the Purtells because of the tombstones and that the neighbors took the tombstones as a threat. He also testified that the neighbors were afraid of Jeffrey Purtell. Further, Officer Mason testified that he was aware that the neighbors had a prior altercation before the November 6, 2002 incident. In addition, he testified that Jeffrey Purtell told him he put up the signs to get back at his neighbors, and thus Officer Mason thought Jeffrey Purtell was seeking revenge.

Viewing the evidence and all reasonable inferences in a light most favorable to Officer Mason, a rational jury could conclude that the language on the tombstones constituted threats, that the neighbors were afraid of Jeffrey Purtell, and that they feared for their safety. As such, the Court will not disturb the jury's conclusion that the tombstones constituted fighting words – "those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *See Chaplinsky,* 315 U.S. at 572.

### B. Language on the Tombstones

The Purtells also argue that the language on the tombstones was directed to the public – not the individual neighbors – and thus the statements did not amount to fighting words. In support of their argument, the Purtells rely on an Arizona case, *Citizen Publishing Co. v. Miller,* 210 Ariz. 513, 516, 115 P.3d 107, 110 (Ariz. 2005). Arizona state court cases are not controlling authority on this Court. Nonetheless, evidence in the record indicates that although the Purtells placed the tombstones referring to their neighbors in their front yard, the tombstones faced the street and specifically referred to their neighbors by name. *See Cohen v. California,* 403 U.S. 15, 20, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971) (language must be "directed to the person of the hearer.") (citation omitted). Accordingly, based on the evidence presented at trial, a rational jury could conclude that the tombstones were directed at the neighbors in question.

5

**II.     Motion for a New Trial Pursuant to Rule 59(a)**

The Purtells also move this Court for a new trial pursuant to Rule 59(a). In ruling on a motion for new trial under Rule 59(a), the Court must determine whether the jury verdict was against the weight of the evidence or if the trial was unfair to the moving party. *Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004). Federal courts will not "set aside a jury verdict if a reasonable basis exists in the record to support the verdict, viewing the evidence in the light most favorable to the prevailing party, and leaving issues of credibility and weight of evidence to the jury." *Id.* The Seventh Circuit reviews new trial motions for an abuse of discretion, which occurs only when no reasonable person could agree with the district court. *ABM Marking, Inc. v. Zanasi Fratelli S.R.L.,* 353 F.3d 541, 543 (7th Cir. 2003).

**A.     Motion for a New Trial**

The Purtells contend that the jury's verdict was against the weight of the evidence, *see Kapelanski,* 390 F.3d at 530, and incorporate the same arguments they made in their Rule 50(b) motion. For the reasons discussed in detail above, the Court denies the Purtells' motion under Rule 59(a). The Court will not set aside the jury's verdict because, viewing the evidence in a light most favorable to Officer Mason, a reasonable evidentiary basis exists to support the jury's verdict. *Kapelanski,* 390 F.3d at 530

**B.     Jury Instructions**

Next, the Purtells argue that because the Court erred in ruling on two of their proposed jury instructions, they are entitled to a new trial. The Court is not required to give an "idealized set of perfect jury instructions," instead, the instructions must be legally correct and supported by the evidence. *Byrd v. Illinois Dep't. of Pub. Health,* 423 F.3d 696, 705 (7th Cir. 2005). To

prevail on a Rule 59(a) motion based on erroneous jury instructions, the Purtells must establish that (1) the instructions did not adequately state the law, and (2) the error was prejudicial because the instructions confused or misled the jury. *Id.*; *Boyd v. Illinois State Police*, 384 F.3d 888, 894 (7th Cir. 2004). Erroneous jury instructions are not prejudicial unless "considering the instructions as a whole, along with all of the evidence and arguments, the jury was misinformed about the applicable law." *Boyd,* 384 F.3d at 894.

The Purtells argue that the Court erred when it did not give Plaintiffs' Proposed Jury Instructions No. 3 and No. 25 in which they defined "fighting words." The relevant language in the Purtells' instructions reads:

> In law, "fighting words" are abusive words or phrases (1) directed at the person of the addressee, and (2) **inherently likely under the circumstances to cause an average person to react with violence,** and (3) playing no role in the expression of ideas.

(Emphasis added).

The Purtells based their instructions on *Chaplinsky v. New Hampshire,* 315 U.S. 568, 572, 62 S.Ct. 766, 86 L.Ed. 1031 (1942); *Cannon v. City and County of Denver*, 998 F.2d 867, 873 (10th Cir. 1993); *UWM Post, Inc. v. Board of Regents*, 774 F.Supp. 1163, 1169-1171 (E.D.Wis. 1991). Because the Tenth Circuit's and Eastern District of Wisconsin's decisions are not controlling on this Court, the Court turned to binding Supreme Court and Seventh Circuit case law for guidance on the disputed jury instructions. Specifically, *Chaplinsky* states:

> There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which has never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or "fighting" words – **those which by their very utterance inflict injury or tend to incite an immediate breach of the peace**.

*Chaplinsky,* 315 U.S. at 571-72 (emphasis added). Based on *Chaplinsky*, other Supreme Court

cases, and Seventh Circuit case law, as discussed below, the Court gave the following jury instruction:

> In law, "fighting words" are abusive words or phrases (1) directed at the person of the addressee, (2) **which by their very utterance inflict injury or tend to incite an immediate breach of the peace,** that is, words that are likely to provoke a violent reaction, and (3) play no role in the expression of ideas.

(emphasis added).

The Purtells argue that the inclusion of the language "by their very utterance inflict injury or" from the *Chaplinsky* opinion allowed the jury to find that the statements on the tombstones were "fighting words" even if they were not likely to provoke a violent reaction. Citing an Eastern District of Wisconsin case, the Purtells argue that the Supreme Court has narrowed the *Chaplinsky* definition of fighting words. *See UWM Post, Inc,*, 774 F.Supp. at 1170.

The Supreme Court, however, has recently cited the disputed *Chaplinsky* language with approval. *See Virginia v. Black*, 538 U.S. 343, 359, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003) ("a State may punish those words **'which by their very utterance inflict injury** or tend to incite an immediate breach of the peace.'"). Furthermore, in the context of a disorderly conduct violation, the Seventh Circuit has also cited the disputed *Chaplinksky* language with approval. *See Gower v. Vercler,* 377 F.3d 661, 670 (7th Cir. 2004). Specifically, when determining whether plaintiff Keith Gower's repeated offensive oral remarks combined with his other attempts to humiliate his father-in-law constituted fighting words, the Seventh Circuit explained:

> We reject Gower's assertion because we have little difficulty concluding, as a matter of law, that Deputies Vercler and Garrett had probable cause to believe that Gower's reported verbal assaults, directed at the Taylors, consisted of "fighting words" that "**by their very utterance inflict injury** or tend to incite an immediate breach of the peace," and "the prevention and punishment of which has never been thought to raise any Constitutional problem."

*Id.* (citation omitted) (emphasis added).

It is true that many courts focus on the second part of the *Chaplinsky* definition – "tend to incite an immediate breach of the peace" – instead of the first part. *See, e.g., Cohen*, 403 U.S. at 20 ("personally abusive epithets ... inherently likely to provoke a violent reaction"). The disputed *Chaplinsky* language, however, is still good law. *See Virginia v. Black,* 538 U.S. at 359; *Gower,* 377 F.3d at 670. Because the Purtells cannot establish that the Court's instructions failed to adequately state the relevant law, their argument based on the jury instructions fail.

### C. Evidentiary Ruling

Finally, the Purtells challenge the Court's evidentiary ruling pertaining to the exclusion of evidence that their son, David, was afflicted with Guillain-Barre Syndrome at the time of the events in this matter. A party seeking a new trial based on a district court's alleged erroneous evidentiary rulings bears a "heavy burden." *Alverio v. Sam's Warehouse Club,* 253 F.3d 933, 942 (7th Cir. 2001). The Seventh Circuit reviews "the exclusion of evidence for abuse of discretion and gives considerable deference to the trial judge," and thus, "even if a judge's rulings are found to be erroneous, they may be deemed harmless if the record indicates that the end result of the trial would have remained unchanged." *Id.* (internal citation omitted). In other words, a "new trial is warranted only if the error has a substantial and injurious effect or influence on the determination of a jury, and the result is inconsistent with substantial justice." *Cerabio LLC v. Wright Med. Tech., Inc.,* 410 F.3d 981, 994 (7th Cir. 2005) (internal citation omitted).

Prior to trial, the Court granted Officer Mason's motion in limine to exclude any evidence concerning David Purtell's illness. Officer Mason argued that any such testimony was

9

inadmissible because it lacked proper foundation, was irrelevant, and was also prejudicial. In granting Officer Mason's motion, the Court concluded:

> [A]ny evidence concerning David Purtell's illness does not relate to any fact that is of consequence in this action. *See* Fed.R.Evid. 401. In other words, whether David Purtell was in the hospital or had Gullian-Barre Syndrome does not relate to the tombstones, the neighbors' complaints about the tombstones, Officer Mason's involvement in this matter, or whether the tombstones constituted "fighting words." Furthermore, even if David's illness were relevant, Plaintiffs' attempt to use such evidence to evoke sympathy would be unfairly prejudicial. *See* Fed.R.Evid. 403.

(R. 52-1, Court Order of April 10, 2006).

The Purtells contend that their son's illness goes to the severity of Vicki Purtell's mental and emotional suffering. Even if the Purtells' contention were true, the Court unequivocally ruled that any such evidence would be unfairly prejudicial to Officer Mason. The Purtells did not address Rule 403's limitations in their motion in limine, nor do they address the Court's ruling concerning prejudice in their post-trial motion. Without more, they have failed to establish that any such "error has a substantial and injurious effect or influence on the determination of a jury, and the result is inconsistent with substantial justice." *Cerabio,* 410 F.3d at 994. The Purtells' argument based on the Court's exclusion of the evidence regarding their son's illness thus fails.

## **CONCLUSION**

For these reasons, the Court denies Plaintiffs' post-trial motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) and motion for a new trial pursuant to Rule 59(a).

Date: July 18, 2006

**ENTERED**

*[signature]*

**AMY J. ST. EVE**
**United States District Court Judge**